

EXHIBIT 1

## SUNTRUST
### SunTrust Mortgage

### MORTGAGE BROKER AGREEMENT

This Mortgage Broker Agreement (the "Agreement") is made and entered into effective as of Sept 20, 20__ (the "Effective Date") by and between SunTrust Mortgage, Inc. ("Lender"), a Virginia corporation with its principal office at 901 Semmes Avenue, Richmond, Virginia 23224, and _____ ("Broker"), a S.C. Corporation with its principal office at _____.

In consideration of the mutual promises and covenants contained herein, Lender and Broker agree as follows:

1. **Brokerage of Mortgage Loans.** Broker agrees to originate, process and broker Mortgage Loans to Lender, and Lender agrees to close such Mortgage Loans in its own name and with its own funds, in accordance with and subject to the terms and conditions of this Agreement and Lender's requirements.

2. **Definitions.** As used in this Agreement, the following definitions shall apply. Certain other terms are defined elsewhere in this Agreement.

    2.1. "**Application**" means a request for a Mortgage Loan submitted to Broker that meets Lender's requirements.

    2.2. "**Applicant**" means a person who has requested a Mortgage Loan by personally executing an Application for the Mortgage Loan.

    2.3. "**Borrower**" means the individual(s) obligated to repay a Mortgage Loan.

    2.4. "**Business Day**" means any day on which Lender is open to the public for substantially all of its business, which is normally every day other than (i) a Saturday or Sunday or (ii) any federal public holiday observed by Lender.

    2.5. "**Close**," "**Closed**" or "**Closing**" means the time when a Borrower signs a Note evidencing a Mortgage Loan and the Mortgage securing payment of such Note, or the time when the previously signed Note and Mortgage are delivered and become effective, depending upon local practice in the jurisdiction in which the Secured Property is located.

    2.6. "**Commitment**" means an agreement by Lender to Close and fund a Mortgage Loan on the terms and conditions set forth therein.

    2.7. "**Confidential Information**" means any confidential or proprietary information of Lender, and any nonpublic personal information pertaining to any Applicant or Borrower, obtained by Broker in connection with the transactions contemplated by this Agreement.

    2.8. "**Consumer Disclosures**" means all disclosures or notices required or customarily used to comply with all applicable federal, state and local laws, rules and regulations applicable to consumer credit transactions involving loans secured by residential real estate, including, without limitation, the Truth-in-Lending Act, the Real Estate Settlement Procedures Act of 1974, the Equal Credit Opportunity Act, the Fair Credit Reporting Act, the Home Mortgage Disclosure Act of 1975, the Fair Housing Act, the Homeowners Protection Act of 1998, the National Flood Insurance Act of 1968, the Flood Disaster Protection Act of 1973, and Title V of the Gramm-Leach-Bliley Act, all as amended, together with the rules and regulations promulgated thereunder.

    2.9. "**Delinquent**" means that all or any part of the monthly installment of principal and interest due on a Note, or the Escrows or other amounts required to be paid under the terms of a Mortgage, is unpaid after the date any such amount is due.

    2.10. "**Escrows**" means all funds collected from the Borrower to pay expenses required to be paid pursuant to the Mortgage, including, without limitation, hazard insurance premiums, flood insurance premiums, mortgage insurance premiums, taxes, assessments, and ground rents; and any water, sewer and other governmental charges that, if not paid, may result in liens on the Secured Property with priority over the Mortgage Loan.

    2.11. "**Fannie Mae**" or "**FNMA**" means the Federal National Mortgage Association, or any successor thereto.

    2.12. "**FHA**" means the Federal Housing Administration, or any successor thereto.

    2.13. "**FHA Approval**" means a commitment issued for FHA insurance of a Mortgage Loan.

    2.14. "**FHA Authorized Agent**" means a person or entity that Lender will sponsor as a FHA authorized agent pursuant to FHA guidelines.

    2.15. "**FHA Loan Correspondent**" means a person or entity that Lender will sponsor as a FHA loan correspondent pursuant to FHA guidelines.

    2.16. "**FHA Mortgage Loan**" means a Mortgage Loan insured by FHA, as evidenced by a mortgage insurance certificate issued by HUD.

    2.17. "**FHA/VA Mortgage Loan**" means a FHA Mortgage Loan or a VA Mortgage Loan.

    2.18. "**Freddie Mac**" or "**FHLMC**" means the Federal Home Loan Mortgage Corporation, or any successor thereto.

    2.19. "**GNMA**" means the Government National Mortgage Association, or any successor thereto.

    2.20. "**GNMA Requirement**" means the requirements, representations and warranties established from time to time by GNMA with respect to Mortgage Loans eligible for inclusion in pools backing a GNMA Mortgage Backed Security, all as set forth in the GNMA Guide or other pronouncements of GNMA.

    2.21. "**HUD**" means the U.S. Department of Housing and Urban Development, or any successor thereto.

ta-380153 v.9

1

2.22. **"Lock-In"** means an agreement by Lender to fund a Mortgage Loan at a specified interest rate and fees for the time period set forth therein, which agreement is subject to Lender's approval of the Application and the fulfillment of all of Lender's conditions for Closing the Mortgage Loan.

2.23. **"Manual"** means any SunTrust Mortgage Broker Manual that Lender establishes, as the same may be modified or amended from time to time by Lender.

2.24. **"Mortgage"** means the security instrument securing a Mortgage Loan with real property including, without limitation, a mortgage, a deed of trust, a deed to secure debt, a security deed, or any other security instrument, together with all riders or amendments to such instrument.

2.25. **"Mortgage Loan"** means any eligible 1-4 family residential real property secured loan product approved from time to time by Lender. The term Mortgage Loan encompasses all rights, title and interest in and to the Mortgage Loan, including, without limitation, the servicing rights, all Escrows, the Note, the Mortgage, all applicable insurance policies, and all other documentation and information collected by Broker in connection with the origination, processing and brokering of the Mortgage Loan. If Broker is sponsored by Lender under Section 7 of this Agreement, the term Mortgage Loan also includes a FHA/VA Mortgage Loan, as applicable.

2.26. **"Note"** means the instrument evidencing the Borrower's promise to repay the principal amount, plus interest, of the Mortgage Loan, together with all riders or amendments to such instrument.

2.27. **"Prior Agreement"** means any broker/lender agreement, broker agreement, mortgage broker agreement, broker loan purchase agreement, or similar agreement entered into prior to the Effective Date by and between Broker and Lender, or any of their respective predecessor companies (including, without limitation, Crestar Mortgage Corporation or SunTrust Mortgage).

2.28. **"Secured Property"** means the real property (or, if applicable, the leasehold interest in real property) and improvements thereon subject to the lien of the Mortgage securing a Mortgage Loan.

2.29. **"VA"** means the Department of Veterans Affairs, or any successor thereto.

2.30. **"VA Agent"** means a person or entity that Lender will sponsor as a VA agent pursuant to VA guidelines.

2.31. **"VA Approval"** means a commitment issued for a VA guaranty of a Mortgage Loan.

2.32. **"VA Mortgage Loan"** means a Mortgage Loan guaranteed by VA, as evidenced by a loan guaranty certificate issued by VA.

3. **Operation of this Agreement.**

   3.1. **General.** This Agreement sets forth the terms and conditions under which Broker will originate, process and broker Mortgage Loans to Lender. No obligation is created by this Agreement for Broker to broker, or Lender to Close and fund, a particular amount of Mortgage Loans or any particular Mortgage Loan.

   3.2. **Non-Exclusivity.** The origination, processing and brokerage of Mortgage Loans by Broker to Lender, and the Closing and funding of such Mortgage Loans by Lender, shall each be on a non-exclusive basis. Nothing in this Agreement precludes Broker from originating, processing and brokering Mortgage Loans to, or Lender from Closing and funding Mortgage Loans originated, processed and brokered by, any other person or entity.

   3.3. **The Manual.** All Mortgage Loans originated, processed and brokered pursuant to the Agreement shall be subject to the terms of the Manual and this Agreement. In the event of any inconsistency between the provisions of the Manual and the provisions of this Agreement, the provisions of this Agreement shall prevail over and supersede the inconsistent provisions of the Manual. Lender reserves the right to amend or modify the Manual (including, without limitation, by adding new provisions of the same or a different nature as the existing provisions of the Manual, or by deleting provisions of the Manual) in its sole discretion from time to time. Lender shall provide Broker with a copy of the original Manual and/or notices of any amendments or modifications to the Manual or any memoranda, bulletins or other information relating to the Manual by posting notice of the same on an Internet web site designated from time to time by Lender.

   3.4. **Termination of Prior Agreements.** All Prior Agreements are hereby terminated and superseded by this Agreement. The termination of any such Prior Agreement shall not affect the vested rights of the parties thereunder pursuant to the terms of the Prior Agreement or applicable law.

   3.5. **Compliance Matters.** All Mortgage Loans that Broker originates, processes and brokers to Lender must comply with all applicable federal and state laws, rules and regulations including, without limitation, the laws, rules and regulations described in Section 2.8 of this Agreement. It is Lender's policy, and Broker acknowledges and agrees, that Broker must comply with both the letter and the spirit of such laws, rules and regulations. Without limiting the generality of the foregoing or the effect of any specific provision of this Agreement, Broker acknowledges and agrees to the following:

   (a)   The Fair Housing Act and the Equal Credit Opportunity Act apply to all aspects of a credit transaction. This includes, without limitation, the pricing and terms of Mortgage Loans, the level of assistance provided to applicants, and the underwriting of mortgage loans. The Fair Housing Act and/or Equal Credit Opportunity Act prohibit discrimination on the basis of an applicant's race, color, national origin, sex, religion, marital status, age (provided the applicant has the capacity to contract), familial status, handicap, the applicant's receipt of income derived from any public assistance program, or the applicant's exercise, in good faith, of any right under the Consumer Credit Protection Act.

   (b)   In accordance with the Real Estate Settlement Procedures Act of 1974 and HUD Regulation X, the payment of compensation to Broker by Lender is solely in exchange for services actually performed and/or goods and facilities actually furnished by Broker. Broker's total compensation shall not exceed the reasonable value of the services actually performed and the goods and facilities actually furnished by Broker. For this purpose, Broker's total compensation includes any amounts paid by the Borrower and any amounts paid by the Lender in the Mortgage Loan transaction.

   3.6. **Financial Statements.** Broker shall deliver to Lender financial statements of Broker, as required by Lender, within 90 calendar days after the end of each fiscal year of Broker.

3.7 **Agreement of Non-Solicitation.** Broker shall not, after the Effective Date, take any action, or permit or cause any action to be taken on Broker's behalf by any person or entity, to solicit any Borrower to refinance any Mortgage Loan made and funded by Lender under this Agreement, or take any other action which would otherwise encourage the prepayment of any such Mortgage Loan, except for general solicitations of the public at large. In addition, Broker agrees that it will not assist any person or entity in making any solicitation of such Borrowers.

4. **Loan Application Packages.**

   4.1. **Providing of Information; Application; Lock-In.** In accordance with Lender's requirements, Broker shall provide to prospective Applicants information regarding Lender's Mortgage Loan products including, without limitation, Lender's current interest rates and fees on such Mortgage Loan products. Broker shall take a completed Application from each Applicant for a Mortgage Loan. Each Applicant shall personally execute the completed Application. If the Applicant requests a Lock-In for the Mortgage Loan, Lender may in its discretion issue a Lock-In. Each Lock-In shall be subject to the terms and conditions specified therein. Each Lock-In is also subject to Lender's right not to Close and fund the Mortgage Loan in accordance with the provisions of Section 12 of this Agreement. Broker acknowledges that Lender may not offer Lock-Ins for all of its Mortgage Loan products.

   4.2. **Origination and Processing of Loan Application Packages.**

   4.2.1. **Loan Application Package.** Broker shall originate and process a package of documentation (the "Loan Application Package") on behalf of each Applicant in accordance with Lender's requirements. The Loan Application Package shall typically consist of the Application together with supporting credit information; verifications of credit, employment, deposits and mortgage payment histories; copies of all Consumer Disclosures; original appraisal for the Secured Property; and such other information as may be required by Lender. Broker shall be responsible for the accurate preparation and completion of the Loan Application Package.

   4.2.2. **Origination and Processing.** In connection with each Application, Broker shall perform such origination and processing services as may be requested by Lender. Such services typically shall include the analysis of the Applicant's income and debt and prequalifying the Applicant to determine the maximum loan amount that the Applicant may be able to afford; educating the Applicant regarding the home financing process; advising the Applicant about the different types of Mortgage Loan products that may be available; demonstrating to the Applicant how Closing costs and monthly payments may vary for each Mortgage Loan product; collecting financial information and documents that are part of the Application process; providing to the Applicant, on a timely basis, all of the Consumer Disclosures and other disclosures required by Lender; initiating or ordering verifications of employment, deposits, mortgages, and other loans; initiating or ordering appraisals and, as necessary, inspections/engineering reports; initiating or ordering Closing documents and flood zone determinations or services; assisting the Applicant in understanding and clearing credit problems; maintaining regular contact with the Applicant, Lender, the Closing agent for the Mortgage Loan and other appropriate persons or entities between the time of Application and the time of Closing to apprise them of the status of the Application and the Mortgage Loan process and gathering any additional information as needed; and, if customary in the jurisdiction in which the Secured Property is located, participating in the Closing. The parties acknowledge that the specific services, goods and facilities provided by Broker may vary from transaction to transaction, and will depend upon the unique circumstances relating to each Mortgage Loan and Closing.

   4.3. **Appraisal.** An appraisal shall be performed for the Secured Property which meets Lender's requirements. Each appraisal must be performed by an appraiser who is acceptable to Lender.

   4.4. **Submission of Loan Application Package; Commitment and Underwriting.** Upon completion of the Loan Application Package, Broker shall submit the Loan Application Package to Lender in the manner required by Lender. Lender shall underwrite the Application and make a decision on the Application in its sole discretion. If Lender approves the Application, Lender may issue a Commitment to the Broker. Each Commitment shall be subject to all terms and conditions stated therein. Each Commitment is also subject to Lender's right not to Close and fund the Mortgage Loan in accordance with the provisions of Section 12 of this Agreement.

5. **Closing of Mortgage Loans.** All Mortgage Loans shall be Closed as required by Lender and the Manual. Lender shall prepare all loan Closing instructions and shall transmit the same to the Closing agent. All Mortgage Loans shall be Closed in the name of Lender and with Lender's funds. Broker shall not retain any right, title or interest in or to a Mortgage Loan including, without limitation, any servicing rights, Escrows, the Note, the Mortgage, insurance policies, or any other documentation or information relating to the Mortgage Loan. Prior to and in connection with the Closing of each Mortgage Loan, Broker shall deliver such Consumer Disclosures or other documents and perform all actions requested by Lender to assist Lender or the Borrower with respect to the Closing. Prior to the Closing of each Mortgage Loan, Broker shall obtain and deliver to Lender an insured closing letter in favor of Lender from the title company that will insure the lien of the Secured Property. The form and content of the letter must be satisfactory to Lender. At Lender's request, Broker shall also perform all other acts necessary to assist Lender in perfecting Lender's title to and security for each Mortgage Loan. Following each Closing, Broker shall, at Lender's request, assist Lender in having the Borrower correct or complete any Note, Mortgage or other documentation relating to the Mortgage Loan.

6. **Disclosure and Payment of Broker Compensation.** In addition to the Consumer Disclosures that are provided in connection with a Mortgage Loan, not less than two business days prior to the Closing of a Mortgage Loan, Broker shall disclose to both Lender and the Closing agent for the Mortgage Loan full and complete information regarding all compensation that Broker has received and expects to receive from the Applicant/Borrower. Following the Closing of each Mortgage Loan, Broker shall be entitled to receive from Lender such compensation, if any, for the goods, facilities and services actually furnished by Broker as the parties may agree. No compensation shall be payable by Lender to Broker with respect to any Mortgage Loan that does not Close.

7. **Sponsorship of Broker for FHA/VA Mortgage Loans.**

   7.1. **General.** Lender may, at its sole option, sponsor Broker as a FHA Authorized Agent, a FHA Loan Correspondent, and/or a VA Agent. Unless Lender has so sponsored Broker, the provisions of this Section 7 shall not be applicable. Lender may at any time, with or without cause, notify Broker that Lender will terminate Lender's sponsorship of Broker. As of the effective date of the termination, Lender shall cease accepting Loan Application Packages with respect to FHA/VA Mortgage Loans, but shall continue to process, Close and fund FHA/VA Mortgage Loans for previously submitted Loan Application Packages.

   7.2. **Compliance With Lender's Requirements.** If Lender sponsors Broker as a FHA Authorized Agent, a FHA Loan Correspondent, and/or a VA Agent, Broker shall comply with all of Lender's requirements. Broker acknowledges that Lender alone shall underwrite all Applications for FHA/VA Mortgage Loans, and that all approved FHA/VA Mortgage Loans shall be Closed in the name of Lender with Lender's funds.

3

la-380153 v.9

7.3. **FHA Mortgage Loans.** If Broker is sponsored as a FHA Authorized Agent or a FHA Loan Correspondent, Broker shall comply in all respects with all lending requirements of FHA and all requirements of FHA pertaining to or governing FHA Authorized Agents or FHA Loan Correspondents, respectively. For each FHA Mortgage Loan, Broker shall obtain a FHA Approval by Lender, and cause all conditions for the FHA Approval to be met.

7.4. **VA Mortgage Loans.** If Broker is sponsored as a VA Loan Agent, Broker shall comply in all respects with all lending requirements of VA and all requirements of VA pertaining to or governing VA Loan Agents. For each VA Mortgage Loan, Broker shall obtain a VA Approval by Lender, and cause all conditions for the VA Approval to be met.

7.5. **GNMA Requirements.** Each FHA/VA Mortgage Loan shall comply with GNMA Requirements as of the date of the Closing of each FHA/VA Mortgage Loan.

8. **Notification of Disciplinary or Other Action by FHA, VA, Freddie Mac, Fannie Mae, HUD, or GNMA.** Broker shall notify Lender in writing within 30 days following the initiation or threat of any disciplinary action, enforcement action, lawsuit, administrative proceeding or similar action or proceeding by FHA, VA, Freddie Mac, Fannie Mae, HUD, or GNMA, or of any pending investigation by FHA, VA, Freddie Mac, Fannie Mae, HUD, or GNMA, against Broker or any of Broker's affiliated companies, or against any of the directors, officers, employees, or agents of either Broker or any of Broker's affiliated companies.

9. **Representations and Warranties With Respect to Mortgage Loans.** Broker represents and warrants to Lender as to each Mortgage Loan originated, processed and brokered by Broker hereunder, both as of the date that Broker submits each Loan Application Package to Lender and as of the time of the Closing of each Mortgage Loan hereunder, as follows:

    9.1. **Eligibility.** Broker has originated, processed and brokered each Mortgage Loan in full compliance with this Agreement and Lender's requirements.

    9.2. **Compliance with Applicable Law.** Broker has complied with, and each Mortgage Loan is in compliance with, all applicable federal, state and local laws, rules and regulations with respect to the Mortgage Loan, including, but not limited to, the laws, rules and regulations described in Section 2.8 of this Agreement and all applicable usury limitations. Further, all Consumer Disclosures relating to the Mortgage Loan have been properly given on a timely basis in compliance with all applicable laws, rules and regulations.

    9.3. **Title Insurance.** There is no exception to or condition affecting the title to the Secured Property other than usual and customary exceptions satisfactory to Lender which do not adversely affect title to, or the marketability of, the Secured Property.

    9.4. **Secured Property Intact.** The Secured Property has not been damaged so as to adversely and materially affect its value and is otherwise in good repair. There are no proceedings pending for the partial or total condemnation of the Secured Property.

    9.5. **Accuracy of Application and Related Documentation.** All information contained in each Application, the Loan Application Package and other documentation submitted to Lender in connection with the Mortgage Loan, including all signatures thereon, is genuine, complete and accurate; no such documentation has been in any manner changed or modified after its execution; no fraudulent or misleading information (including, without limitation, any information obtained from or concerning the Borrower or the Secured Property, any credit report regarding the Borrower, or any appraisal report regarding the Secured Property) has been provided to Lender in connection with the Mortgage Loan; Broker is not aware of any information that would contradict or render inaccurate any documentation submitted to Lender in connection with the Mortgage Loan; and Broker is not aware of any omissions in the Application, Loan Application Package or other documentation submitted to Lender in connection with the Mortgage Loan that would render the same incomplete or inaccurate. Each Applicant and Borrower is alive, is of majority age or older and has the legal capacity to apply for and enter into a Mortgage Loan.

    9.6. **Acceptable Investment.** There are no circumstances or conditions with respect to the Mortgage Loan, the Secured Property, the Borrower, or the Borrower's credit standing that can reasonably be expected to: (a) cause private institutional investors to regard the Mortgage Loan as an unacceptable investment; or (b) cause the Mortgage Loan to become Delinquent; or (c) adversely affect the Mortgage Loan's value or marketability.

    9.7. **Environmental Issues.** There exist no violations of any federal, state or local environmental or toxic waste law, rule or regulation with respect to the Secured Property, and there is no pending action, suit or proceeding with respect to the same.

    9.8. **Eligibility of FHA/VA Mortgage Loans.** In the case of a FHA/VA Mortgage Loan, the FHA/VA Mortgage Loan is in full compliance with this Agreement, Lender's requirements and, as applicable, the requirements of FHA or VA as of the date the FHA Approval or VA Approval is issued; provided, however, that the effective dates established by FHA or VA for any amendments to that agency's rules shall apply to the FHA/VA Mortgage Loan. Each FHA/VA Mortgage Loan is in full compliance with GNMA Requirements as of the date of each Closing of such FHA/VA Mortgage Loan.

    9.9. **GNMA Representations and Warranties.** Broker makes to Lender the representations and warranties contained in the GNMA Requirements with respect to each FHA/VA Mortgage Loan.

    9.10. **FHA Approval or VA Approval.** In the case of a FHA Mortgage Loan, there is a FHA Approval by Lender in effect for such FHA Mortgage Loan and all conditions of the FHA Approval have been met. In the case of a VA Mortgage Loan, there is a VA Approval by Lender in effect for such VA Mortgage Loan, and all conditions of the VA Approval have been met.

10. **Other Warranties and Representations.** Broker represents and warrants to Lender as of the Effective Date, as of the date Broker submits each Loan Application Package to Lender, and at the time of Closing of each Mortgage Loan under this Agreement as follows:

    10.1. **Qualification of Broker.** Broker is a person or entity of the type described in the first paragraph of this Agreement and has been duly organized and is validly existing and in good standing under the laws of the jurisdiction of its organization. Broker is duly and validly qualified and authorized to do business and to originate, process, and broker Mortgage Loans in each jurisdiction where it conducts its business. Broker has the requisite power and authority to own and operate its properties and has all licenses, certificates and permits required to engage in such transactions in each jurisdiction where it originates, processes and brokers Mortgage Loans.

    10.2. **Due Execution and Delivery.** The execution and delivery of this Agreement are within the corporate or organizational powers of Broker and have been duly and validly authorized by all necessary action on the part of Broker, and neither the execution and delivery of this Agreement by Broker, nor the consummation by Broker of the transactions herein contemplated, nor compliance with the provisions hereof by Broker will (a) conflict with or result in a breach of, or constitute a default under, any of the provisions of the articles of incorporation or organization or bylaws of Broker or any law, rule or regulation, or any judgment,

4

la-380153 v.9

decree, or order binding on Broker, or any of its properties, or any of the provisions of any indenture, mortgage, deed of trust, contract or other instrument to which it is a party or by which it is bound or (b) result in the creation or imposition of any lien, charge, or encumbrance upon any of its properties pursuant to the terms of any such indenture, mortgage, deed of trust, contract or other instrument.

10.3. **Binding Agreement.** This Agreement has been duly executed and delivered by Broker and constitutes a legal, valid and binding agreement of Broker, enforceable in accordance with its terms, subject, as to enforcement of remedies, to applicable bankruptcy, reorganization, insolvency, or other similar laws affecting creditor's rights generally from time to time in effect, and to general principles of equity.

10.4. **No Governmental Consent.** No governmental consent or approval is required with respect to Broker's execution, delivery or performance of this Agreement.

10.5. **Litigation.** There is no action, suit, proceeding or government investigation pending, or, to the knowledge of Broker, threatened against Broker which, if adversely determined, would adversely affect Broker's business or its performance under this Agreement.

10.6. **Financial Condition.** All financial statements provided by Broker to Lender have been prepared in accordance with generally accepted accounting principals and reflect Broker's financial condition as of the date thereof. There have been no material adverse changes in Broker's financial condition since that date.

10.7. **Insurance Coverage.** Broker has in place such errors and omissions, fidelity bond and general liability insurance policies, providing coverage in such amounts, as may be required by Lender or applicable law.

11. **Survival of Representations and Warranties.** All representations and warranties contained in this Agreement shall survive (i) any investigation made by or on behalf of Lender, (ii) any foreclosure or liquidation of a Mortgage Loan, (iii) any sale of a Mortgage Loan by Lender, (iv) any repurchase of a Mortgage Loan by Lender, and (v) any termination of this Agreement, or any similar event. All representations and warranties contained in this Agreement shall inure to the benefit of Lender, its successors, affiliates and assigns.

12. **Events of Default.** Lender, at its sole option, shall have the right to immediately terminate this Agreement without prior notice should an Event of Default occur. In the event this Agreement is terminated under this Section 12, (a) Lender shall cease accepting Loan Application Packages for consideration and (b) Lender shall have the right, in its sole discretion, not to Close and fund any Loan Application Packages submitted prior to the termination, any Mortgage Loan for which a Lock-In was issued prior to the termination, any Mortgage Loan for which a Commitment was issued prior to the termination, or any other Mortgage Loan. After any termination under this Section 12, the provisions of this Agreement shall continue to apply to any Mortgage Loans Closed and funded by Lender under this Agreement. Certain provisions of this Agreement, as specified in certain sections of this Agreement, shall survive any termination of this Agreement. The following shall be Events of Default under this Agreement:

12.1. **Uncured Breach of Representation or Warranty.** Broker has breached any representation or warranty contained in this Agreement and Broker has failed to cure such breach to the satisfaction of Lender within 10 days of Lender's notice thereof.

12.2. **Failure to Deliver Certain Documents.** Broker has failed to deliver to Lender any documentation required by this Agreement or Lender within the applicable time periods for such delivery.

12.3. **False or Misleading Statements.** Any information submitted by Broker or any statement, report or document furnished by Broker to Lender hereunder was incomplete, inaccurate, false, or misleading in any material respect when made or delivered, regardless of whether Broker had or should have had knowledge of the same at the time. This includes, without limitation, any information contained in any Application or other documentation relating to an Application or a Mortgage Loan submitted by any Borrower.

12.4. **Failure to Comply With Other Terms or Conditions.** Broker's failure to comply with any other term or condition of this Agreement or any requirement of Lender.

12.5. **Bankruptcy, Etc.** Broker becomes insolvent; institutes or has instituted against it a proceeding in bankruptcy or under any insolvency law or for reorganization, receivership or dissolution; otherwise seeks to take advantage of any bankruptcy or insolvency statutes; admits in writing its inability to pay its debts as they mature; makes an assignment for the benefit of its creditors; consents to the appointment of a trustee, receiver or similar person or entity for all or a substantial part of its property; discontinues its business; or adopts a resolution providing for dissolution or a liquidation of its business.

13. **Purchase Requirement.** In addition to any other rights and remedies which Lender may have against Broker under this Agreement or applicable law, if any of the Events of Default described in Sections 12.1, 12.2, 12.3, 12.4, or 12.5 of this Agreement shall have occurred with respect to any Mortgage Loan brokered by Broker to Lender hereunder, Broker agrees to purchase such Mortgage Loan (or, if the Mortgage Loan has been foreclosed upon, to purchase the Secured Property if it is still held by Lender) within 10 calendar days after Lender's demand. Broker's purchase obligation under this Section 13 shall survive any of the events described in Section 11 of this Agreement. Broker's obligation to purchase Mortgage Loans under this Section 13 shall be in addition to, and not in replacement of, Broker's obligation to purchase Mortgage Loans under any other provision of this Agreement or applicable law. In the event Broker is obligated to purchase a Mortgage Loan under this Section 13, the purchase price shall be the unpaid principal balance of the Mortgage Loan plus (a) any mortgage broker fees that Broker has received from Lender in connection with the Mortgage Loan transaction, (b) all accrued interest through and including the date of purchase, and (c) reimbursement to Lender for any expenses or court costs incurred in connection with the sale of such Mortgage Loan to Broker or investigating or researching the circumstances surrounding the Mortgage Loan or enforcing such purchase including, without limitation, attorney's fees or other professional fees. Lender shall have the right to offset the amount owed by Broker to Lender pursuant to this Section 13 at any time, without prior notice, against any balances, credits, deposits, accounts or monies of Broker then or thereafter held by Lender or amounts owed by Lender to Broker.

14. **Rescission of Mortgage Loan.** In the event that any Mortgage Loan brokered by Broker hereunder is rescinded by the Borrower pursuant to the federal Truth-in-Lending Act, Federal Reserve Regulation Z or any similar federal or state law, rule or regulation, Broker shall immediately pay to Lender, upon Lender's demand, the full amount of (a) any mortgage broker fees that Broker has received from Lender in connection with the Mortgage Loan transaction and (b) any other fees or compensation, however denominated, which Lender pays to the Borrower as a result of the Borrower's rescission. Lender's remedy under this Section shall be in addition to all other remedies contained in this Agreement or provided by applicable law. This Section 14 shall survive any termination of this Agreement.

5

ls-380153 v.9

15. **Indemnity.** Broker hereby agrees to indemnify, defend and hold harmless Lender and its successors, affiliates, and assigns, together with their respective officers, directors, employees and agents (collectively, the "Indemnitees"), from and against any and all claims, losses, damages, fines, penalties, forfeitures, attorney's fees, judgments and any costs, court costs, fees and expenses relating to, arising out of, based upon, or resulting from (a) a breach by Broker of any representation, warranty, term, condition or obligation contained in or made pursuant to this Agreement or elsewhere, (b) a failure by Broker to disclose any information that renders any such representation or warranty misleading or inaccurate, (c) any materially inaccurate, incomplete, false, or misleading information provided by or through Broker to Lender, (d) any misrepresentation made by or through Broker to Lender concerning any Mortgage Loan, or (e) Broker's ownership of or actions with respect to any Mortgage Loan. This Section 15 shall survive any purchase, sale or transfer of any Mortgage Loan or any interest therein by any of the Indemnitees, the foreclosure or liquidation of the Mortgage Loan, and any termination of this Agreement.

16. **Relationship of Parties.** Neither party shall be deemed an agent, employee or legal representative of the other party. Each party is acting solely on its own behalf and as an independent contractor. Neither party to this Agreement shall have the power or authority to represent, act for, bind or commit the other party in connection with any action taken pursuant to this Agreement. Neither the execution nor the performance of this Agreement shall be construed to establish any partnership or joint venture between the parties.

17. **Notices.** Except as provided in Section 3.3 of this Agreement, all notices, requests, demands, consents, approvals, agreements, or other communications under this Agreement (collectively, "Communications") required or permitted to be given hereunder shall be in writing. A Communication shall be sufficient if it is personally delivered or sent by facsimile transmission, recognized carrier of overnight mail (postage prepaid), or registered or certified U.S. Mail (postage prepaid, return receipt requested). A Communication given by personal delivery shall be deemed to be given when actually delivered. A Communication by facsimile transmission shall be deemed to be given when sent (if confirmation of transmission is received by the party transmitting the facsimile). A Communication by recognized carrier of overnight mail shall be deemed to be given 2 Business Days after the date of delivery to the recognized carrier of overnight mail. A Communication by registered or certified U.S. Mail shall be deemed to be given 3 Business Days after the date of deposit in the U.S. Mail. All Communications shall be given to the parties at their respective addresses or facsimile numbers indicated below:

If to Lender: SunTrust Mortgage, Inc.
[handwritten address]

Attention:
Facsimile No.

If to Broker: Stewart M. Bledsoe
[handwritten address]

Facsimile No.

In the event that either recipient's address in this Section 17 is incomplete or missing, the recipient's address on page 1 of this Agreement shall be used for communications. In the event that either recipient's facsimile number in this Section 17 is missing, that recipient may provide its facsimile number to the other party by giving written notice of the same in the manner provided in this Section 17; provided, however, that such notice shall be effective only upon actual receipt.

Either party may change the recipient address or facsimile number to which Communications shall be sent by giving written notice of such change to the other party in the manner provided in this Section 17; provided, however, that such notice shall be effective only upon actual receipt.

18. **Term and Termination of Agreement.** This Agreement may be terminated by either party at any time without cause immediately upon giving written notice of termination to the other party. In addition, this Agreement may be terminated by Lender pursuant to any other provision of this Agreement providing for termination. As of the effective date of a termination under this Section 18, Lender shall cease accepting Loan Application Packages for consideration, but shall continue to process, Close and fund Mortgage Loans for Loan Application Packages submitted prior to the termination in accordance with the provisions of this Agreement. The preceding sentence shall not apply to any termination of this Agreement under Section 12 of this Agreement or a termination of this Agreement under any section of this Agreement other than this Section 18. After any termination under this Section 18, the provisions of this Agreement shall continue to apply to any Mortgage Loans previously Closed and funded by Lender under this Agreement. Certain provisions of this Agreement, as specified in certain sections of this Agreement, shall survive any termination of this Agreement.

19. **Binding Agreement; Successors and Assigns; Assignment; Entire Agreement; Amendments.** This Agreement and Lender's requirements are binding upon the Broker and Lender and their respective successors and assigns. This Agreement, and Broker's duties, obligations or rights under this Agreement, may not be assigned by Broker without the prior written consent of Lender. Lender shall have the right to assign this Agreement, or any of its duties, obligations, or rights under this Agreement, to any affiliate of Lender or to any successor holder of any Mortgage Loan. This Agreement and Lender's requirements constitute the entire agreement and understanding of the parties with respect to the subject matter of this Agreement. Lender, in its sole discretion, may from time to time amend or modify this Agreement or any addendum, schedule or exhibit hereto including, without limitation, (a) by changing any of the provisions of this Agreement or any addendum, schedule or exhibit hereto, (b) by adding new provisions of the same or a different nature than the existing provisions of this Agreement or any addendum, schedule or exhibit hereto, (c) by deleting any of the provisions of this Agreement or any addendum, schedule or exhibit hereto, (d) by the addition of one or more new addenda, schedules or exhibits hereto, or (e) by the deletion of any addendum, schedule or exhibit hereto. Lender's right to amend or modify this Agreement or any addendum, schedule or exhibit hereto includes, without limitation, the right to designate an affiliate of Lender for which Broker may originate, process, arrange and/or broker Mortgage Loans and/or other secured or unsecured credit products. All amendments or modifications of this Agreement or any addendum, schedule or exhibit hereto shall be effective upon the Lender's providing of notice thereof to Broker. No amendments or modifications of this Agreement or any addendum, schedule or exhibit hereto shall require any signature of Broker.

20. **No Waiver; Rights and Remedies Cumulative.** No failure or delay on the part of either party in exercising any of its rights, powers, privileges or remedies hereunder shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other future exercise or the exercise of any other rights, powers, privileges or remedies, all of which shall be cumulative.

21. **Governing Law.** This Agreement is to be construed in accordance with and governed by the internal laws of the Commonwealth of Virginia without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the internal laws of the Commonwealth of Virginia to the rights and duties of the parties.

22. **Valid Agreement.** This Agreement is not valid until signed by both Broker and Lender.

6

la-380153 v.9

23. **Confidentiality.**

    23.1. **Non-Disclosure.** Broker shall not disclose any Confidential Information to any person or entity other than with the prior written consent of Lender except (a) as may be strictly necessary for Broker to perform its duties under the terms of this Agreement or (b) pursuant to a subpoena or order issued by a court of competent jurisdiction or administrative or legislative body. Further, Broker will comply with all applicable federal, state, and local privacy laws, rules, regulations and ordinances including, without limitation, Title V of the Gramm-Leach-Bliley Act and the regulations promulgated thereunder. To the extent that any such privacy laws, rules, regulations or ordinances require additional or modified security, privacy, or confidentiality agreements between Lender and Broker, Broker agrees to execute such additional or modified agreements as requested from time to time by Lender. The obligations of Broker set forth in the preceding sentence are in addition to, and not in substitution of, Broker's obligations under Section 26 of this Agreement.

    23.2. **Receipt of Subpoena or Order.** If Broker receives such a subpoena or order requesting it to disclose any Confidential Information, Broker shall (a) notify Lender in writing within 3 Business Days following its receipt of the subpoena or order and (b) reasonably cooperate with Lender in taking steps to resist or narrow the request for Confidential Information or to obtain assurances that the confidentiality of the Confidential Information shall be maintained to the extent feasible.

24. **Severability.** If any provision of this Agreement, or the application of this Agreement to any person, entity, place or circumstance, shall be held by a court of competent jurisdiction to be invalid, unenforceable or void, the remainder of this Agreement and such provisions as applied to other persons, entities, places, and circumstances shall remain in full force and effect.

25. **Expenses.** Whether or not the transactions contemplated by this Agreement are consummated, each party shall pay all expenses incurred by it or on its behalf in connection with this Agreement and the transactions contemplated hereby, except as otherwise set forth in this Agreement.

26. **Further Assurances.** Subject to the terms and conditions of this Agreement, each party agrees to use its best efforts to do, or cause to be done, all things necessary, proper or advisable under applicable laws, rules and regulations to consummate and post-Close the transactions contemplated by this Agreement as expeditiously as practicable including, without limitation, the performance of such further acts or the execution and delivery of any additional instruments or documents as either party may reasonably request in order to carry out the purposes of this Agreement and the transactions contemplated thereby.

27. **Time is of the Essence.** Time is of the essence in respect to all provisions of this Agreement and all requirements of Lender in which a definite time for performance is specified, provided, however, that this Section 27 shall not be construed to limit or deprive a party of the benefit of any grace or use period provided for in this Agreement or Lender's requirements.

28. **Failure or Delay in Performance.** Neither party shall be liable for failure or delay in performing its obligations under this Agreement if such failure or delay is due to circumstances beyond the party's reasonable control including, without limitation, acts of any governmental body, war, insurrection, sabotage, embargo, fire, flood, strike or other labor disturbance, interruption of or delay in transportation; provided, however, that lack of credit or funds for financing shall not in any event be considered a matter beyond the reasonable control of the party. Each party (a) shall promptly notify the other in writing of any such delay or failure in performance, the expected duration thereof, and its anticipated effect on the party expected to perform and (b) shall use its best efforts to remedy such delay, except that neither party shall be under any obligation to settle a labor dispute.

29. **Drafting.** This Agreement has been negotiated at arms length and between persons or entities that are sophisticated and knowledgeable in the matters dealt with in this Agreement. In addition, each party has had the opportunity to be represented by legal counsel in connection with the negotiation of this Agreement. Accordingly any rule of law or legal decision that would require interpretation of any ambiguities in this Agreement against the party that has drafted it is not applicable and is waived to the fullest extent allowed by law. The provisions of this Agreement shall be interpreted in a reasonable manner to effect the purpose of the parties and this Agreement.

30. **Choice of Forum.** Broker (a) submits to personal jurisdiction in the Commonwealth of Virginia, the courts thereof and the United States District Courts sitting therein, for the enforcement of this Agreement, (b) waives any and all rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the Commonwealth of Virginia for the purpose of litigation to enforce this Agreement, and (c) agrees that service of process may be made upon the Broker in any manner prescribed by applicable federal rules of civil procedure for the giving of notice to the Broker. Any legal proceeding brought against either of the parties hereto with respect to this Agreement shall be brought in the Circuit Court of Henrico County, Virginia, or in the United States District Court for the Eastern District of Virginia, Richmond Division, irrespective of where such party may be located at the time of such proceeding.

31. **Waiver of Jury Trial.** EACH PARTY TO THIS AGREEMENT WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT.

32. **Recovery of Costs and Attorney's Fees.** In any legal action, arbitration, or other proceeding brought to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to actual attorney's fees and any other costs incurred in that proceeding in addition to any other relief to which it is entitled.

33. **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, each party has caused this Agreement to be executed by its duly authorized officer, all as of the Effective Date.

SunTrust Mortgage, Inc. ("Lender")    LCMB, Inc. ("Broker")

By: _____          By: _____
Title: SG DVP                         Title: President

la-380153 v.9

7